**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |
|---|---|
| AATU, LLC; CSTS HEALTHCARE SOLUTIONS, LLC; SHANE SILVER, D.C.; JASON MARUCCI, D.C.; BRETT GREENWALD, D.C., | |
| Plaintiffs, | CIVIL ACTION NO.: 4:25-cv-33 |
| v. | |
| JARED BROWN, D.C., | |
| Defendant. | |

## **O R D E R**

Plaintiffs sued their former business partner, Defendant Dr. Jared Brown, D.C., following the dissolution of a multispecialty medical practice operated by the parties. (Doc. 38.) Plaintiffs consist of these entities and individuals: AATU, LLC ("AATU"), a Florida LLC; CSTS Healthcare Solutions, LLC ("CSTS"), a Florida LLC; as well as Dr. Jason Marucci, Dr. Shane Silver, and Dr. Brett Greenwald in their individual capacities (the "Individual Plaintiffs"). (Id. at pp. 1–2.) Plaintiffs bring claims for breach of contract, breach of fiduciary duties, fraud, and civil conspiracy. (See generally id.) Before the Court is Defendant's Motion to Dismiss. (Doc. 41.) Plaintiffs filed a Response to Defendant's Motion, (doc. 43), and Defendant filed a Reply, (doc. 49). For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. (Doc. 41.) The Court also finds, *sua sponte*, that Plaintiffs have not met the Federal Rules of Civil Procedure's heightened requirements for pleading fraud and, accordingly, **DIRECTS** them to replead their fraud claim.

**BACKGROUND**

## I.    Factual Allegations

In the spring of 2020, Dr. Greenwald and Dr. Marucci partnered with Defendant to create Precision Spine & Joint LLC ("Precision"), a multispecialty medical practice operating in Savannah, Georgia. (Doc. 38, pp. 2–3.)[1] At the time of Precision's formation, Defendant practiced a single specialty (chiropractic) through his own company, Coastal Empire Chiropractic, Inc. d/b/a Bright Life Chiropractic ("Bright Life"). (Id. at p. 3.) Defendant was given a 40% stake in Precision. (Id.) In September 2021, Dr. Silver joined Precision. (Id. at p. 4.) Upon Dr. Silver's joining, Defendant retained his 40% ownership interest in Precision while Marucci and Greenwald each sold a 5% ownership interest to Dr. Silver, leaving Marucci and Greenwald each with 25%, and Silver with a 10% ownership interest. (Id.)

Sometime later, Defendant sought to bring Dr. Jordan Kuppinger into Precision despite hesitation by the other members stemming from Dr. Kuppinger's reputation for volatile and litigious behavior. (Id. at pp. 5–6.) Defendant assured his partners that their concerns were non-issues and that Dr. Kuppinger was not at fault in his prior disputes. (Id. at p. 5.) Dr. Kuppinger was added to the practice after a trial period. (Id. at p. 6.)

Plaintiffs claim that Precision was "restructured" as KBS Savannah in October 2022. (Id.) As outlined in KBS Savannah's operating agreement (the "Operating Agreement"), membership of KBS Savannah consisted of Defendant, Dr. Kuppinger, and CSTS, a single-member Florida LLC owned by Dr. Silver. (Doc. 38, p. 6; doc. 38-1, p. 2.) While neither Dr. Greenwald nor Dr. Marucci had any membership interest in KBS Savannah in their individual capacities, AATU, a Florida LLC owned in equal shares by Drs. Greenwald and Marucci, was designated as "the

---

[1] Precision "inherited [its] location, supplies, equipment, and personnel" from a previously existing entity, SOSI, which "was a multispecialty practice servicing the Savannah area." (Doc. 38, p. 3.)

exclusive manager of the business and operations" of KBS Savannah.  (Doc. 38, p. 6; doc. 38-1, p. 10.)  KBS Savannah also had a "Management Board" consisting of Defendant, Dr. Kuppinger, and CSTS, which was responsible for approving all "Major Decisions" affecting the company. (Doc. 38, p. 9; doc. 38-1, pp. 9–10, 29.)  Defendant, Dr. Kuppinger, AATU, and CSTS were all parties to the Operating Agreement.  (Doc. 38, p. 6.)

The Operating Agreement contained the following non-compete provision (the "Restrictive Covenant"):

> For so long as a party owns any Units or Sharing Ratio, and for a period of two (2) years thereafter (the "Restrictive Period"), each party shall not, directly or indirectly, provide any services or enter into, engage in, be employed by or consult with any business that concurrently engages in a multispecialty medical practice consisting in any two (2) or more of the following specialties: chiropractic, interventional pain, orthopedic, orthopedic surgery, neurology and neurosurgery (the "Competitive Practices"), with [sic] the Restricted Area . . . [which] shall mean Chatham County, Georgia. Nothing herein shall prevent a party from practicing a single specialty of Competitive Practices; it is in the intent of the parties that the restrictive covenant will only appl [sic] to a joint practice consisting of at least two (2) of the Competitive Practices.

(Id. at p. 7 (quoting doc. 38-1, p. 20).)  Despite the Restrictive Covenant, Defendant and Dr. Kuppinger formed Brain Injury Solutions, LLC ("Brain Injury Solutions") two months after the formation of KBS Savannah.  (Id. at p. 8.)  Brain Injury Solutions had its principal office in Savannah, Georgia.  (Id.)  Defendant and Dr. Kuppinger also engaged in a referral scheme with a company called Meridian, directing patients toward Defendant's Bright Life practice rather than KBS Savannah.  (Id.)  Dr. Marucci contacted Meridian to "inquire about potential contractual arrangements between Meridian and KBS Savannah in order to vet compliance," but was rebuked by Dr. Kuppinger for doing so and told to cease contact with Meridian.  (Id. at p. 9.)  When KBS Savannah became aware that Defendant was potentially violating the Operating Agreement's Restrictive Covenant, it sent a cease-and-desist letter citing the Restrictive Covenant.  (Id. at p.

10.)  Defendant responded and claimed that the services provided by Brain Injury Solutions and Bright Life were expressly exempted from the Restrictive Covenant.  (Id.)  Defendant also provided a copy of the Operating Agreement to support this claim, but the copy provided by Defendant contained several differences and alleged alterations from the executed Operating Agreement.  (Id.; see also doc. 38-3 (version of operating agreement provided by Defendant).)  Additionally, the agreement provided by Defendant contained the same DocuSign Envelope ID and same timestamps for each signature to the document, which is impossible for two different documents. (Doc. 38, p. 11.)

Following these and other alleged misdeeds, Defendant and Dr. Kuppinger called a meeting of KBS Savannah's Management Board.  (Id. at p. 9.)  Dr. Silver was unable to attend the meeting and did not participate.  (Id.)  At the meeting, Defendant and Dr. Kuppinger voted to terminate AATU's Management Services Agreement, triggering the dissolution of KBS Savannah.  (Id.; see also doc. 38-1, p. 21.)  KBS Savannah is now in the process of winding up.  (Doc. 38, pp. 9–10.)

## II.     Procedural History

Plaintiffs subsequently sued Defendant and Dr. Kuppinger.  (See generally doc. 1.)  Jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.  (See id.)  Plaintiffs later filed a Notice of Voluntary Dismissal, (doc. 9), seeking to voluntarily dismiss Dr. Kuppinger from the case with prejudice, which was granted, (doc. 10).  Precision was initially a plaintiff here but was voluntarily dismissed because of concerns regarding its current status and its potential effect on this Court's subject matter jurisdiction.  (See doc. 34.)  After Precision was dismissed, Plaintiffs filed an Amended Complaint.  (Doc. 38.)  Count I of the Amended Complaint seeks a declaratory judgment that one of the attached Operating Agreements ("Plaintiffs' Operating Agreement"),

(doc. 38-1), as opposed to the version allegedly produced by Defendant, is the legally binding agreement between the parties. (Doc. 38, pp. 12–13.) Count II is a breach of contract claim for Defendant's alleged violation of the Restrictive Covenant. (Id. at pp. 13–14.) Count III alleges that Defendant breached fiduciary duties owed to KBS Savannah. (Id. at pp. 14–15.) Count V alleges that Defendant engaged in fraudulent misrepresentations to KBS Savannah, AATU, CSTS, and the Individual Plaintiffs.[2] (Id. at p. 16.) Count VI is a claim for civil conspiracy, alleging that Defendant conspired with Dr. Kuppinger to breach the Restrictive Covenant and violate his fiduciary duties. (Id. at pp. 16–17.) Plaintiffs seek damages (including punitive damages), an injunction against further violations of the Restrictive Covenant, attorney's fees, and a declaratory judgment that the Plaintiff's Operating Agreement is the sole legally binding agreement between the parties. (Id. at pp. 17–19.)

Defendant moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (See doc. 41-1.) Defendant argues that Plaintiffs lack standing to bring the claims for breach of contract and fiduciary duties because those claims belong solely to KBS Savannah. (Id. at pp. 2, 8–9.) Defendant further claims that, even if Plaintiffs have standing, several counts in the Amended Complaint fail to state a claim upon which relief can be granted because of deficient pleading. (Id. at pp. 2, 15–19.) In their Response opposing Defendant's Motion, Plaintiffs contest Defendant's arguments and request in the alternative that, "should the Court find any portion of the Complaint deficient," they be granted leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). (Doc. 43, p. 22.)

---

[2] Count IV is a breach of fiduciary duty claim against Dr. Kuppinger. (Doc. 38, p. 15.) Although Dr. Kuppinger was previously dismissed from the proceedings, (doc. 10), Plaintiffs' Amended Complaint retains all references and claims against him to comply with the Court's directive that, in amending their original complaint to remove Precision, Plaintiffs "not make any other substantive changes to the pleading." (Doc. 38, p. 1 n.1 (quoting doc. 34, p. 9).) Count IV is therefore **DISMISSED**.

The Court addresses these arguments below, and also addresses, *sua sponte*, several concerns about Plaintiffs' standing. The Court, following its review of the filings, questions whether Count V satisfies the heightened standard of pleading for fraud claims imposed by the Federal Rules of Civil Procedure. While Defendant did not address this in his Motion, the Court possesses the inherent authority to raise the issue *sua sponte*. Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc., No. 14-81271-CV, 2015 WL 5118122, at *6 (S.D. Fla. Sept. 1, 2015) (citing Fikes v. City of Daphne, 79 F.3d 1079, 1081 n.6 (11th Cir. 1996)).

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

**DISCUSSION**

### I.      Whether Plaintiffs Have Standing

Defendant argues in his Motion that the Amended Complaint should be dismissed for lack of standing because Plaintiffs have failed to establish an injury-in-fact as required by Article III and, additionally, because Georgia law requires that Plaintiffs' claims asserting KBS Savannah's interests must be brought derivatively on behalf of KBS Savannah rather than by the Plaintiffs directly. (Doc. 41-1, pp. 7.) Article III of the United States Constitution establishes that "federal courts are courts of limited jurisdiction . . . empowered to hear only those cases falling within the judicial power of the United States." Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1231 (11th Cir. 2019) (quoting Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999)). Accordingly, at the outset of any case, a court must determine that a plaintiff has standing to pursue their claim in federal court. Id. at 1232 (internal citations omitted). "[A]t the motion-to-dismiss stage, [a plaintiff bears] the burden of alleging facts that plausibly establish . . . standing." Trichell v. Midland Credit Mgmt., 964 F.3d 990, 996 (11th Cir. 2020). "To satisfy the standing requirement, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision.'" Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1083 (11th Cir. 2019) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).  To establish an injury in fact, a plaintiff must allege a harm that is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Women's Emergency Network v. Bush, 323 F.3d 937, 943 (11th Cir. 2003) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  A plaintiff must "clearly and specifically set forth facts" satisfying these requirements, and a court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore v. Arkansas, 495 U.S. 149, 155–56 (1990).  "[S]tanding is jurisdictional, [and] a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) (internal quotation omitted).  Further, standing "is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) (internal quotations omitted).  When there are multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." Id.

Although Defendant frames his argument as implicating Article III and the Court's subject matter jurisdiction, (doc. 41-1, p. 7), the Motion to Dismiss primarily focuses on whether Plaintiffs' claims are direct or derivative—a concern falling outside of Article III. Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 125–26 (2d Cir. 2022) ("[T]he inquiry into whether a claim is direct, and a plaintiff therefore has 'standing' to bring it, is not an Article III standing inquiry."); see also Culverhouse v. Paulson & Co., 813 F.3d 991, 993 (11th Cir. 2016) (whether a claim is derivative or direct is not a jurisdictional question).  Whether Plaintiffs may bring their claims directly is instead a question of "prudential standing." See Miller, 43 F.4th at 126 n.8; see also

Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd., 493 U.S. 331, 335–36 (1990) (distinguishing between Article III standing and prudential standing in the context of a shareholder seeking to redress a corporate injury). The prudential question of whether a claim is direct or derivative is one of state law. Freedman v. MaqicJack Vocaltec Ltd., 963 F.3d 1125, 1134 (11th Cir. 2020).[3] When federal jurisdiction is based on diversity of citizenship (as it is here), a plaintiff must possess standing under both Article III and applicable state law. See Ave. CLO Fund Ltd. v. Bank of Am., NA, 709 F.3d 1072, 1077 (11th Cir. 2013) (citing Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005)); see also Harnett v. Est. of Chislett, 487 F. Supp. 3d 1270, 1276 (S.D. Ala. 2020). When a plaintiff possesses Article III standing but improperly attempts to bring derivative claims directly, the remedy is not to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) but to instead dismiss the complaint for failure to state a claim under Rule 12(b)(6). Culverhouse, 813 F.3d at 994.

While the parties' briefs focus on these prudential considerations under state law, the Court's review of the filings has identified Article III concerns as to whether certain Plaintiffs possess standing for the specific claims raised in the Amended Complaint. The Court "must raise *sua sponte* any issues related to standing that [it] spot[s]." Polelle v. Fla. Sec'y of State, 131 F.4th 1201, 1207 (11th Cir. 2025) (citing AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, 494 F.3d 1356, 1360 (11th Cir. 2007)). As such, the Court must examine all Article III standing concerns before addressing whether Plaintiffs may bring their claims directly.

### A.    Plaintiffs' Standing Under Article III

---

[3] The United States Supreme Court has moved away from the term "prudential standing" in recent years, characterizing the label as "misleading" and "in some tension" with the federal judiciary's obligations under Article III. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125–26 (2014); see also Bank of Am. Corp. v. City of Mia., 581 U.S. 189, 196–97 (2017). Regardless of the terminology used, however, a plaintiff must satisfy applicable "prudential" and "statutory" requirements to bring a claim. Bank of Am. Corp., 581 U.S. at 196.

### (1)    CSTS

CSTS is one of three members of KBS Savannah, with the other members being Defendant and Dr. Kuppinger.  (Doc. 38-1, p. 34.)  While CSTS is a distinct entity from KBS Savannah, courts have found that harm done to closely held corporations and LLCs can constitute an indirect economic injury to shareholders sufficient to give the shareholder Article III standing.  See Fed. Deposit Ins. Corp. for NetBank, FSB v. First Am. Title Ins., No. 1:10-CV-3032-WSD, 2012 WL 13005309, at *8 (N.D. Ga. Mar. 15, 2012) (first citing Rawoof v. Texor Petroleum Co., 521 F.3d 750, 756 (7th Cir. 2008); then citing Whelan v. Abell, 953 F.2d 663, 672 (D.C. Cir. 1992)); see also LJM Partners v. Barclays Cap., Inc., 165 F.4th 552, 567 (7th Cir. 2026) ("We think it sufficiently obvious that a sole shareholder in a corporation experiences a concrete injury when the corporation is injured."); Potter v. Cozen & O'Connor, 46 F.4th 148, 157 (3d Cir. 2022) (injuries to an LLC also inflicted an indirect injury on LLC members sufficient to support Article III standing).  CSTS thus has standing under Article III to bring claims relating to the numerous alleged injuries to KBS Savannah as one of its three members.

### (2)    AATU

Unlike CSTS, AATU is not a member of KBS Savannah, (see doc. 38-1, p. 34), and accordingly cannot rely on injuries to KBS Savannah to establish standing as CSTS can.  Instead, Plaintiffs must show that AATU has suffered a particularized injury of its own sufficient to give it a proper stake in the litigation.  Spokeo, 578 U.S. at 339.

Plaintiffs focus on proving AATU's standing to bring the breach of contract claim in Count II, contending that AATU has standing under O.C.G.A. § 9-2-20(a) as a party to the Operating

Agreement.[4]  (Doc. 43, p. 8.)  Section 9-2-20(a) provides that a party with a vested legal interest in a contract may bring an action to enforce that contract.  While AATU is not a member of KBS Savannah, that does not preclude it from seeking to assert any vested rights it has in the Operating Agreement.  See Kaufman Dev. Partners, L.P. v. Eichenblatt, 749 S.E.2d 374, 377–78 (Ga. Ct. App. 2013) (holding that a former member of an LLC had standing under Section 9-2-20(a) to enforce rights under the LLC's operating agreement as a non-member party to the agreement).  Plaintiffs claim the Restrictive Covenant provides AATU with rights that it can enforce directly. (Doc. 43, pp. 7–8 (citing doc 38-1, pp. 20–21).)  Plaintiffs further note that the Operating Agreement "contains no language limiting enforcement of the Restrictive Covenant to [KBS Savannah] alone," with the plain language of the Agreement stating that the Restrictive Covenant survives the termination of KBS Savannah.  (Id. at p. 9; doc. 38-1, p. 21.)

Taking the allegations in the Amended Complaint as true and construing them in Plaintiffs' favor, the Court finds that Plaintiffs have sufficiently alleged that AATU possesses rights under the Operating Agreement which it may enforce pursuant to Section 9-2-20(a).  This alone does not end the standing inquiry, however.  Article III requires that a plaintiff prove that they have suffered a concrete injury-in-fact, which is distinct from an "injury in law."  See TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms . . . not a freewheeling power to hold defendants accountable for legal infractions." (quoting Casillas v. Madison Ave. Assoc., 926 F.3d 329, 332 (7th Cir. 2019))).  Federal courts have interpreted this important distinction as indicating that a breach of contract divorced from any "actual harm" is

---

[4]  Plaintiffs do not address whether AATU has standing to assert the claims for breach of fiduciary duty, and the allegations in the Amended Complaint focus on Defendant's alleged breach of duties owed to KBS Savannah.  (See doc. 38, pp. 14–15.)  AATU was not a member of KBS Savannah, and Plaintiffs have not alleged that Defendant owed any separate fiduciary duties to AATU.  The Court thus understands Plaintiffs' fiduciary duty claim as being brought by CSTS and the Individual Plaintiffs and not AATU.

11

insufficient for Article III standing.  See Bland v. Urology of Greater Atlanta, LLC, No. 1:23-CV-132-MLB, 2024 WL 3313348, at *7 (N.D. Ga. Mar. 14, 2024); see also Dinerstein v. Google, LLC, 73 F.4th 502, 519 (7th Cir. 2023) ("[Plaintiff] cannot simply allege a bare breach of contract, 'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" (quoting Spokeo, 578 U.S. at 341)); Asphalt Paving Sys. v. Brantley Cnty. & GWES, LLC., No. 5:25-cv-2, 2026 WL 1257466, at *3 n.3 (S.D. Ga. May 7, 2026) (citing SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020)) (distinguishing between "contractual standing" and Article III standing).  A plaintiff does not automatically satisfy Article III's injury-in-fact requirement just because a statute—such as Section 9-2-20(a)—grants it a statutory right and authorizes it to sue to vindicate that right, because "a bare procedural violation, divorced from any concrete harm" is not enough to establish constitutional standing.  Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 924 (11th Cir. 2020) (quoting Spokeo, 578 U.S. at 341).  AATU's standing to enforce the Restrictive Covenant thus depends on whether it has suffered "actual harm" in connection with Defendant's alleged breach.

A review of the Operating Agreement reveals that AATU contributed significant capital to KBS Savannah and was entitled to a share in the net revenue of the company in the form of a "Management Fee," which was to be "equal to the Manager's Sharing Ratio multiplied by the Net Cash Flow of the Company" and "paid monthly or with such other frequency as determined by the Manager."  (Doc. 38-1, pp. 4, 12.)  As a result of Defendant's termination of the Management Agreement, AATU lost this payment.  Moreover, as the Management Fee was not a flat fee but depended on KBS Savannah's cash flow, Defendant's alleged funneling of patients away from KBS Savannah and towards Bright Life could have resulted in a diminution of the Fee.  This would be a direct economic injury to AATU, which is sufficient for Article III standing.  See Debernardis

12

v. IQ Formulations, LLC, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Certainly, an economic injury qualifies as a concrete injury." (citing Clinton v. New York, 524 U.S. 417, 432–33 (1998))). Taking the allegations in Plaintiffs' favor, the Court finds that Plaintiffs have alleged an injury sufficient to give AATU standing under Article III.  AATU may thus bring claims related to Defendant's alleged breach of the Restrictive Covenant.[5]

### (3)    The Individual Plaintiffs

As Defendant notes, the Individual Plaintiffs are not parties to the Operating Agreement and have not alleged that Defendant owed any separate fiduciary or contractual duties to them individually.  (Doc. 41-1, p. 8.)  Indeed, the only count which alleges harm to the Individual Plaintiffs specifically is Count V's claim for fraud.  (Doc. 38, p. 16.)  Plaintiffs nevertheless contend that the Individual Plaintiffs possess standing on two grounds: through the fiduciary duties Defendant allegedly owed the Individual Plaintiffs by virtue of the Individual Plaintiffs' and

---

[5]  While Plaintiffs did not mention the Management Fee in their Amended Complaint, they argue in their Reply that AATU has "suffered a unique harm when, by way of fraud[,] . . . it was terminated as a result of a deceptive scheme by [Defendant] to breach his fiduciary duties." (Doc. 43, p. 11.)  An injury raised for the first time in a reply brief would not typically be considered when evaluating a motion to dismiss. Andy's Music, Inc. v. Andy's Music, Inc., 607 F. Supp. 2d 1281, 1284 (S.D. Ala. 2009).  However, under Federal Rule of Civil Procedure 12(b)(1), where a motion to dismiss includes an attack on a plaintiff's standing, courts have a wide latitude in what they may consider and "are obliged to consider not only the pleadings, but to examine the record as a whole to determine whether [they] are empowered to adjudicate the matter at hand." Elend v. Basham, 471 F.3d 1199, 1208 (11th Cir. 2006) (quoting Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003)).  While standing analysis is typically confined to the four corners of the complaint, a court may look beyond it and examine the whole record.  Corbett, 930 F.3d at 1235 (citing Cone Corp., 921 F.2d at 1206 n.50).  When determining whether the injury-in-fact requirement of standing has been met, courts may even consider arguments raised for the first time in a reply brief.  See, e.g., Marty v. Anheuser-Busch Cos., 43 F. Supp. 3d 1333, 1351 n.11 (S.D. Fla. 2014) (while courts generally will not consider arguments raised for the first time in a reply brief, an argument relating to the injury-in-fact requirement of standing may be considered); Miller v. Hamm, 640 F. Supp. 3d 1220, 1245 (M.D. Ala. 2022) (alterations adopted) ("Ordinarily courts do not consider arguments raised for the first time in a reply brief.  But 'federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" (quoting United States v. Hays, 515 U.S. 737, 742 (1995))).  Plaintiffs may not use their response brief to amend a complaint by adding new claims, but including new theories of injury in fact has been allowed.  See Atkins v. Healthcare Revenue Recovery Grp., LLC, No. 21 CV 2408, 2023 WL 22138, at *4 (N.D. Ill. Jan. 3, 2023).  The Court thus includes Plaintiffs' argument in its analysis of AATU's standing.

13

Defendant's memberships in Precision; and because the Individual Plaintiffs were third-party beneficiaries to the Operating Agreement. (Doc. 43, pp. 14–16.)

Plaintiffs' first argument, regarding Defendant's alleged breach of fiduciary duties owed to the Individual Plaintiffs because of their membership in Precision, is unavailing. Even assuming there are claims that the Individual Plaintiffs can bring that arise out of Defendant's conduct towards Precision, that is irrelevant as all claims in the Amended Complaint relate to Defendant's conduct as a member of KBS Savannah, not Precision. (See doc. 38, pp. 12–18.) The mere fact that a plaintiff has suffered a concrete injury does not entitle a plaintiff to bring claims unrelated to that injury. A breach of the fiduciary duties Defendant owed to Precision does not give the Individual Plaintiffs standing to bring claims for the breach of separate duties owed to another company or for the breach of an unrelated contract committed well after Precision's dissolution. See Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) ("[N]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.") (internal quotation omitted).

The Individual Plaintiffs' standing to enforce the Operating Agreement is also doubtful. The Individual Plaintiffs were not members of KBS Savannah or signatories to the Operating Agreement. As such, they must establish that they possess standing under Georgia law. Stinson v. Twin Pines Coal Co., No. 1:14-CV-334-WKW, 2014 WL 4472605 (M.D. Ala. Sept. 11, 2014) ("[T]he question of whether, for [Article III] standing purposes, a non-party to a contract has a legally enforceable right therein is a matter of state law." (quoting Bochese v. Town of Ponce Inlet, 405 F.3d 964, 981 (11th Cir. 2005))). In Georgia, third-party standing to enforce a contract is governed by O.C.G.A. § 9-2-20(b), which grants third parties standing to enforce a contract if it

is clear from the contract that they were intended as beneficiaries by the contracting parties. Donalson v. Coca-Cola Co., 298 S.E.2d 25, 27 (Ga. Ct. App. 1982). While the Individual Plaintiffs here would all presumably stand to benefit from the Operating Agreement by virtue of their ownership interests in the LLCs involved, that is not enough to grant them third-party standing to *enforce* it. Id. ("'The mere fact that [a third party] would benefit from performance of the agreement is not alone sufficient [to grant third party standing].' It must appear that both parties . . . intended that the third person should be the beneficiary." (first quoting Backus v. Chilivis, 224 S.E.2d 370, 372 (Ga. 1976); then citing LDH Props., Inc. v. Morgan Guaranty Tr. Co., 243 S.E.2d 278, 279–80 (Ga. Ct. App. 1978))). The intent to benefit a third party must appear "on the face of [the] contract" without the use of parol evidence. Perry Golf Course Dev., LLC v. Housing Auth. of Atlanta, 670 S.E.2d 171, 174 (Ga. Ct. App. 2008) (citing Scott v. Mamari Corp., 530 S.E.2d 208, 211 (Ga. Ct. App. 2000)).

Here, the Operating Agreement expressly disclaims any intent to bestow a benefit upon a third party. (Doc. 38-1, p. 26.) Section 12.12 of the Operating Agreement, titled "No Third-Party Beneficiary," states that "[n]othing expressed or implied in this Agreement is intended or will be construed to confer upon or give any Person, other than the parties to this Agreement and their respective legal representatives . . . any rights or remedies under or by reason of this Agreement." (Id.) Plaintiffs argue that the intent to benefit the Individual Plaintiffs can be gleaned from the Operating Agreement's discussion of voting rights, which expressly lists the Individual Plaintiffs as the individuals who have the authority to vote on behalf of CSTS and AATU. (Doc. 43, pp. 15–16.) This argument fails to rebut the Operating Agreement's express disavowal of the existence any third-party beneficiary. While the Individual Plaintiffs are expressly recognized as authorized to vote on behalf of CSTS and AATU, (doc. 38-1, p. 29), there is no indication that this

15

is a special conferral of rights on the Individual Plaintiffs. The Individual Plaintiffs do not appear to be regarded as beneficiaries under the Agreement at all, but rather as representatives acting on behalf of the immediate parties to the Agreement.

Plaintiffs have thus failed to show that the Individual Plaintiffs were intended beneficiaries of the Operating Agreement. Even if the Individual Plaintiffs were third-party beneficiaries of the contract, Plaintiffs have not alleged facts indicating that the Individual Plaintiffs suffered an injury in fact from the breach—a requirement for standing. Bland, 2024 WL 3313348, at *7. Consequently, the Individual Plaintiffs lack standing to assert Count II. Plaintiffs have also failed to allege that Defendant owed, or breached, any fiduciary duties to the Individual Plaintiffs. As such, the Individual Plaintiffs cannot bring the breach of fiduciary duty claim in Count III. Counts II and III are therefore **DISMISSED** as to the Individual Plaintiffs.

### B.    Plaintiffs' Standing to Seek Prospective Relief

In addition to seeking monetary damages, Plaintiffs also seek prospective relief. (Doc. 38, pp. 12–14.) The Court must therefore determine whether Plaintiffs have standing for both forms of relief. Town of Chester, 581 U.S. at 439. Count I seeks a declaratory judgment that Plaintiffs' Operating Agreement is the sole "legally binding and enforceable" version. (Doc. 38, p. 13.) In Count II, Plaintiffs seek not only a recovery for the damages caused by Defendant's alleged contractual breach, but also an injunction prohibiting further violations of the Restrictive Covenant. (Id. at pp. 14, 19.) Standing to seek prospective relief is distinct from standing to recover damages and must be established separately. TransUnion, 594 U.S. at 431; see also City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) (plaintiff had standing to assert claim for damages but lacked standing for injunctive relief). To establish standing for prospective relief, a plaintiff must show a real and immediate threat of future injury. Kennedy v. Floridian Hotel, Inc.,

16

998 F.3d 1221, 1229 (11th Cir. 2021).  The Court examines the issue of Plaintiffs' standing for prospective relief *sua sponte*, concluding that Plaintiffs lack standing for such relief.

Beginning with Count II's request for an injunction, Plaintiffs have failed to plead facts which would entitle them to seek such relief.  Standing to seek injunctive relief requires showing "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury."  Kennedy, 998 F.3d at 1229 (quoting Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013)).  Plaintiffs have pled no facts which suggest that they are subject to such a threat here.  Thus, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiffs' request for injunctive relief in Count II and that request is therefore **DISMISSED**.

Plaintiffs similarly lack standing to seek the declaratory relief sought in Count I.  As with injunctive relief, a plaintiff seeking a declaratory judgment must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  Mack v. USAA Cas. Ins., 994 F.3d 1353, 1357 (11th Cir. 2021) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)).  Standing to seek declaratory relief thus requires a future injury that is "real, immediate, and definite."  Id. (quoting Malowney, 193 F.3d at 1347).  Once again, Plaintiffs have failed to allege any facts indicating that they are threatened with a future injury.  Instead, Plaintiffs merely assert that the supposed operating agreement offered by Defendant is fraudulent and that they "are entitled to a judgment that [Plaintiffs' Operating Agreement] is the legally binding and enforceable version . . . and all other contracts purporting to be valid are without any legal effect."  (Doc. 38, p. 13.)  The Amended Complaint contains no allegations that Defendant is likely to repeat his attempt to pass off a fraudulent copy of the Operating Agreement or that there are any other risks of injury related to the terms of the Operating Agreement.  To the extent that there is some possibility of future harm along those lines, that is

not enough to constitute a "substantial likelihood" of future injury sufficient to establish standing to seek declaratory relief. Mack, 994 F.3d at 1357. Absent a showing of a substantial likelihood of future harm, a request for declaratory judgment is really a request for an impermissible advisory opinion. See Glen v. Club Mediterranee S.A., 365 F. Supp. 2d 1263, 1272 (S.D. Fla. 2005) ("Absent a redressable injury a judicial determination of plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." (quoting Church v. City of Huntsville, 30 F.3d 1332, 1335 (11th Cir. 1994))), aff'd, 450 F.3d 1251 (11th Cir. 2006); see also LJL Holdings Lithonia LLC v. Walgreen Co., 764 F. Supp. 3d 1302, 1308 (N.D. Ga. 2025). Count I is in effect seeking an advisory opinion here and, as such, it is **DISMISSED**.

### C.      Whether Plaintiffs' Claims May be Brought Directly

Having addressed Plaintiffs' standing under Article III, the Court now turns to whether Plaintiffs' claims may be brought directly. In arguing that a direct suit by Plaintiffs is improper, Defendant emphasizes that "Plaintiffs' factual allegations and legal claims center on harm to KBS Savannah . . . ." (Doc. 41-1, p. 8.) Defendant contends that Plaintiffs "are seeking to vindicate rights and recover for injuries that . . . belong *solely* to KBS Savannah as an independent legal entity," but that "KBS Savannah is not named as a plaintiff, and Plaintiffs' claims were not brought derivatively on its behalf." (Id. at p. 8.) Defendant further notes that it has not been alleged that KBS Savannah assigned any of its claims. (Id. at pp. 11–13.) Moreover, Defendant posits that KBS Savannah's dissolution strips it of any legitimate business interest and thus precludes it from enforcing its rights under the Georgia Restrictive Covenant Act, O.C.G.A. § 13-8-50, *et seq*. (Id. at pp. 9–10.) Thus, Plaintiffs may not refile their claims as a derivative action. (Id.)

Plaintiffs respond that they each possess rights under the Operating Agreement that are independent of KBS Savannah's rights and which may be enforced directly, with CSTS and AATU being entitled to bring claims for breach of contract under O.C.G.A. § 9-2-20(a) as signatories of

the Operating Agreement and the Individual Plaintiffs similarly possessing standing under O.C.G.A. § 9-2-20(b) as intended third-party beneficiaries of the Operating Agreement. (Doc. 43, pp. 6–11, 14–16.) AATU also claims to have "suffered special injuries separate from any injury suffered by KBS Savannah or its members," because it was "terminated as a result of a deceptive scheme by [Defendant]." (Id. at p. 11.) Plaintiffs further dispute the legal impact of KBS Savannah's dissolution and contend that it does not preclude the enforcement of claims arising before dissolution. (Id. at pp. 11–13.)

In Georgia, the general rule is that a shareholder seeking to recover damages for breach of duties owed to a corporation must bring a derivative suit on the corporation's behalf. Stoker v. Bellemeade, LLC, 615 S.E.2d 1, 7 (Ga. Ct. App. 2005) (citing Phx. Airline Servs., Inc. v. Metro Airlines, Inc., 397 S.E.2d 699, 701 (Ga. 1990)), rev'd on other grounds, 631 S.E.2d 693 (Ga. 2006); see also Sw. Health & Wellness, L.L.C. v. Work, 639 S.E.2d 570, 576 (Ga. Ct. App. 2006) ("[T]o pursue . . . a direct claim [rather than a derivative claim,] the shareholder must allege more than a wrong done to the corporation, either a separate and distinct injury from that suffered by other shareholders or a wrong involving a contract right existing independently of any right of the corporation."), disapproved of on other grounds, Song v. eGPS Sols. I, Inc., 899 S.E.2d 530 (Ga. Ct. App. 2024). This rule has been extended to the LLC context. Stoker, 615 S.E.2d at 7.

Georgia law recognizes several exceptions to this general rule, and shareholders may bring their claims directly if an exception applies. Barnett v. Fullard, 701 S.E.2d 608, 612 (Ga. Ct. App. 2010) (internal citations omitted). Relevant here is the exception permitting direct suits "where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply." Id.; Thomas v. Dickson, 301 S.E.2d 49, 51 (Ga. 1983). The Supreme Court of Georgia has identified these justifications for the general rule requiring derivative suits:

19

> 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares.

Thomas, 301 S.E.2d at 51. Courts in Georgia have been particularly willing to find exceptions to the general rule in the context of close corporations lacking outside creditors. Stoker, 615 S.E.2d at 7; see also Premier Residential SE, LLC v. Silverstone Residential, LLC, 889 S.E.2d 325, 332 (Ga. Ct. App. 2023) (even when a plaintiff otherwise lacks standing to bring a direct action, "a direct action may nevertheless be proper in the context of a closely held corporation *where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply.*" (quoting Work, 639 S.E.2d at 577)). A close corporation is a corporation "whose stock is not freely traded and is held by only a few shareholders." *Corporation*, BLACK'S LAW DICTIONARY (12th ed. 2024). The willingness to grant an exception to the general rule in the context of close corporations has been extended to the context of "closely held LLCs." Stoker, 615 S.E.2d at 7.

KBS Savannah is similar to a close corporation, consisting of only three members: Defendant, Dr. Kuppinger, and CSTS, a single-member LLC. (Doc. 38-1, p. 34.) The first concern identified in Thomas, preventing a multiplicity of lawsuits, would thus not be implicated by allowing Plaintiffs to bring a direct suit here. This is not a situation where allowing individual suits would risk a plethora of corporate shareholders bringing duplicative claims as all potential plaintiffs who would bring these particular claims are parties to this action. The second rationale for derivative suits is also not implicated here as no facts indicate that there are any third-party creditors whose rights would be threatened or impacted by direct litigation. Moreover, the third and fourth justifications for derivative suits would likely be better served in this case by permitting a direct action. In a derivative suit, any damages recovered would be paid to KBS Savannah rather

20

than to Plaintiffs directly.  See Work, 639 S.E.2d at 576.  Under Section 10.3 of the Operating Agreement, Defendant and Dr. Kuppinger would then be able to profit from their own misconduct by receiving their share of KBS Savannah's assets in the dissolution process.  (Doc. 38-1, pp. 21–22.)  Indeed, Defendant himself notes that any damages obtained in a derivative action "would flow to the members, including its majority members in interest, [Defendant] and Dr. Kuppinger." (Doc. 41-1, p. 14.)  A recovery that would primarily end up in the hands of Defendant and Dr. Kuppinger would not adequately compensate Plaintiffs, and the "'realistic objectives' of avoiding unfair access or distribution of corporate assets" is thus more effectively accomplished here via a direct action.[6]  Dunaway v. Parker, 453 S.E.2d 43, 48 (Ga. Ct. App. 1994) (quoting Thomas, 301 S.E.2d at 51).  The Court thus agrees with Plaintiffs that a direct suit should be permitted and **DENIES** Defendant's Motion to Dismiss to the extent that it argues that Plaintiffs' claims may not be brought directly.

**II.     Whether Plaintiffs Have Failed to State a Claim Upon Which Relief Can be Granted**

Defendant argues that even if the Court finds that Plaintiffs have standing to bring their claims, several counts of Plaintiffs' Amended Complaint should be dismissed for failure to state a claim. (Doc. 41-1, pp. 15–19.)  Defendant contends that Plaintiffs' breach of fiduciary duty claim in Count III fails as a matter of law because of the lack of any fiduciary duties owed by Defendant and, in any case, is barred by Georgia's economic loss rule.  (Id. at pp. 15-17.)  Defendant also

---

[6]  Defendant claims that the third and fourth Thomas concerns favor upholding the derivative action requirement here, arguing that direct recovery by Plaintiffs would inequitably exclude Defendant and Dr. Kuppinger.  (Doc. 49, p. 7.)  Defendant notes that KBS Savannah is in the process of dissolution and its assets are being distributed to its members, making a direct recovery particularly problematic as Defendant and Dr. Kuppinger would be excluded from sharing in the recovery despite their membership.  (Id.)  This argument ignores that Plaintiffs may only recover upon a showing that Defendant, through his actions undertaken with Dr. Kuppinger, acted wrongfully in violation of his contractual and fiduciary duties.  It is a well-settled principle of law that no one may benefit from their own wrongdoing.  See, e.g., Mass. Mut. Life. Ins. v. Woodall, 304 F. Supp. 2d 1364, 1373 (S.D. Ga. 2003).  The Court is thus not persuaded that excluding Defendant and Dr. Kuppinger from recovery would lead to "inequity."

moves to dismiss Plaintiffs' civil conspiracy claim in Count VI as being "entirely derivative of [Plaintiffs'] other tort claims, which themselves are legally deficient." (Id. at p. 19.)

### A.      Whether Count III Plausibly States a Claim for Breach of Fiduciary Duty

A breach of fiduciary duty claim under Georgia law has three elements: "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." King v. King, 69 F.4th 738, 743 (11th Cir. 2023) (quoting Ray v. Hadaway, 811 S.E.2d 80, 84 (Ga. Ct. App. 2018)). Count III asserts that Defendant breached fiduciary duties owed to KBS Savannah through his disloyal behavior and his vote to terminate AATU's management. (Doc. 38, pp. 14–15.) Defendant contends that, as a "non-managing member" of KBS Savannah, he owed no fiduciary duties. (Doc. 41-1, p. 15.)

The fiduciary duties owed by members of an LLC to each other and to the LLC itself under Georgia law are set forth in the Georgia Limited Liability Company Act, O.C.G.A. § 14-11-100 *et seq*. These default statutory duties may be expanded, restricted, or otherwise modified by an LLC's operating agreement, with some restrictions. Ledford v. Smith, 618 S.E.2d 627, 635 (Ga. Ct. App. 2005) (citing O.C.G.A. § 14-11-305). By default, a member of an LLC owes fiduciary duties only to the extent that they are engaged in the management of the LLC's affairs. See O.C.G.A. § 14-11-305(1); see also ULQ, LLC v. Meder, 666 S.E.2d 713, 720 (Ga. Ct. App. 2008) ("[W]hen managing the affairs of the company, a member must act in good faith in the best interests of the company. If a member is not managing the affairs of the company, then no such duty attaches.") A person managing an LLC is subject to the duty to act in good faith in the best interests of the LLC, exercising the care of an ordinarily prudent person. O.C.G.A. § 14-11-305(1). The statute also imposes a general duty of loyalty for those managing the LLC. Ledford v. Peeples, 657 F.3d 1222, 1238 n.47 (11th Cir. 2011) (citing O.C.G.A. § 14-11-305).

While an LLC may be managed by its members, LLCs may also be managed by a manager. Meder, 666 S.E.2d at 720–21.  A "manager" is one in whom management is vested, having the right and authority to manage the affairs of the LLC as provided in the LLC's operating agreement or articles of organization.  O.C.G.A. §§ 14-11-101(15), 14-11-304(b).  In "manager-managed LLCs," where managerial duties are vested in a designated manager, non-managing members do not owe fiduciary duties to either the LLC or other members.  O.C.G.A. § 14-11-305(1) ("[A] person who is a member of a[n LLC] in which management is vested in one or more managers, and who is not a manger, shall have no duties to the [LLC] or to the other members solely by reason of acting in his or her capacity as a member . . . .").  However, even in manager-managed LLCs, specific management powers and duties may be delegated to members other than the designated manager, and those members will consequently owe fiduciary duties when acting in a managerial capacity.  See Inland Atl. Old Nat. Phase I, LLC v. 6425 Old Nat., LLC, 766 S.E.2d 86, 91 (Ga. Ct. App. 2014), disapproved of on other grounds by Hanham v. Access Mgmt. Grp. L.P., 825 S.E.2d 217 (Ga. 2019).

KBS Savannah is a manager-managed LLC, with AATU having been designated as the "exclusive manager of the business and operations" of the company.  (Doc. 38-1, pp. 10, 29.) Defendant thus contends that, as a "non-managing member," he owed no duties to KBS Savannah. (Doc. 41-1, p. 15.)  Plaintiffs dispute Defendant's characterization of himself as a "non-managing" member, arguing that the characterization cherry-picks language from the Operating Agreement and contending that Defendant "was not merely a member of KBS Savannah but was also involved in its management."  (Doc. 43, p. 16.)  As evidence of Defendant's managerial status, Plaintiffs point out that Defendant was part of KBS Savannah's Management Board.  (Id. at p. 17; see also doc. 38-1, p. 29.)  All "Major Decisions" of KBS Savannah require a majority vote of the

Management Board.  (Doc. 38-1, pp. 10–11.)  Notably, all actions resulting in the "dissolving, liquidating, or winding up of [KBS Savannah]"—including the termination of the Management Services Agreement—constitute Major Decisions requiring the Management Board's approval.  (Id. at p. 12.)  Plaintiffs contend that Defendant's termination of the Management Services Agreement and dissolution of KBS Savannah were thus not merely passive acts of membership.  (Doc. 43, pp. 17–18.)  Rather, because Defendant undertook those actions in his capacity as a Management Board member, Plaintiffs aver that the conduct is subject to the fiduciary duties imposed by Georgia law.  (Id.)  Plaintiffs argue that, at the very least, whether Defendant acted in a managerial capacity is a factual dispute that must be resolved in Plaintiffs' favor at the motion to dismiss stage.  (Id. at p. 18.)

Taking the allegations in the Amended Complaint as true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently pled a claim for breach of fiduciary duty in Count III.  That Defendant is not the designated "Manager" of KBS Savannah under the Operating Agreement does not conclusively establish that Defendant owed no fiduciary duties.  While the Operating Agreement provides that AATU is the "Manager" of KBS Savannah, (doc. 38-1, p. 29), it also subjects all "Major Decisions" to majority approval by the Management Board.  (Id.)  As a member of the Management Board, Defendant's role in the Major Decision of terminating the Management Services Agreement can be plausibly construed as managerial and therefore subject to fiduciary duties.  See Argentum Int'l, LLC v. Woods, 634 S.E.2d 195, 203 (Ga. Ct. App. 2006) ("[The defendant] was a member of the board of managers . . . and, as such, owed a fiduciary duty to those [p]laintiffs who held equity interests.").  Moreover, O.C.G.A. § 14-11-305(1) does not limit fiduciary duties to only those who are formally designated as "managers,"

24

but applies such duties to all those who exercise managerial power in an LLC.  Plaintiffs have thus pled a plausible claim for breach of fiduciary duty, which is all that is required at this stage.[7]

Defendant also argues that Plaintiffs' breach of fiduciary duty claim in Count III is barred by Georgia's "economic loss rule," which provides that "a plaintiff may not recover in tort for purely economic damages arising from a breach of contract." Hanover Ins. v. Hermosa Constr. Grp., 57 F. Supp. 3d 1389, 1395 (N.D. Ga. 2014) (citing Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 608 S.E.2d 636, 637 (Ga. 2005)).  Under the rule, recovery in tort is precluded where the alleged tort is inextricable from a defendant's breach of a contract. Id. at 1395–96.  Defendant argues that the rule precludes Plaintiffs' fiduciary duty claim here because the "claim is based entirely on [Defendant's] conduct as a member of KBS Savannah" and "not independent of the Operating Agreement." (Doc. 41-1, pp. 16–17.)  Defendant thus contends that, even if he owed a fiduciary duty, Count III is barred under Georgia law. (Id. at p. 17.)

---

[7] In his Reply to Plaintiffs' Response, Defendant accuses Plaintiffs of attempting to impermissibly amend their Complaint through briefing and argues that the Complaint itself does not refer to Defendant's status as a member of the Management Board. (Doc. 49, pp. 11–12.)  According to Defendant, Plaintiffs' Complaint "predicate[s] the alleged fiduciary duty in question on [Defendant's] status as a member," but in their Reply to Defendant's Motion to Dismiss, "Plaintiffs attempt to recast the duty as arising from [Defendant's] position on the Management Board." (Id.)  Defendant urges the Court to "evaluate the sufficiency of the Complaint as pleaded without regard to new facts inserted into the briefing" and claims that, "as pleaded, the fiduciary duty claim is based solely on [Defendant's] membership status and not his role on the Board." (Id. at p. 12.)  Defendant is correct that "[a] plaintiff may not amend her complaint through argument in a brief" opposing a motion to dismiss. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (citing Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)).  However, Plaintiffs' Amended Complaint names Defendant as a member of KBS Savannah's Board, (doc. 38, p. 9), and specifically includes Defendant's actions as a Management Board member among the allegations in Count III, (id. at p. 14).  Additionally, Plaintiffs attached KBS Savannah's Operating Agreement to the Complaint, which describes Defendant's duties as a Board member. (See doc. 38-1.)  In evaluating a Motion to Dismiss under Rule 12(b)(6), courts may consider exhibits attached to the complaint as they are considered part of the complaint. Saville v. Webb, No. 24-10998, 2025 WL 2254239, at *5 n.4 (11th Cir. Aug. 7, 2025) (citing Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205-06 (11th Cir. 2007)).  The Court may thus consider Defendant's role on the Management Board without allowing Plaintiffs to impermissibly amend their complaint through briefing.

While Defendant's alleged misconduct is intimately interconnected with his obligations under the Operating Agreement, that alone is not enough to implicate the economic loss rule. On the contrary, "where 'an independent duty exists under the law, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty . . . and thus does not fall within . . . the rule.'" Hanover Ins., 57 F. Supp. 3d at 1396 (quoting Rosen v. Protective Life Ins., No. 1:09-CV-3620, 2010 WL 2014657, at *9 (N.D. Ga. May 20, 2010)). As discussed above, the Amended Complaint and attached exhibits sufficiently plead that Defendant owed an independent duty under the law—namely, a fiduciary duty imposed by Section 14-11-305(1). As a result, the economic loss rule does not bar Count III's claim that Defendant breached that independent fiduciary duty.

**B.    Whether Plaintiffs Have Sufficiently Stated a Claim for Civil Conspiracy**

Finally, Defendant argues that Plaintiffs' claim for civil conspiracy in Count VI must also be dismissed as it is derivative of Plaintiffs' other allegedly deficient tort claims. (Doc. 41-1, p. 19.) Under Georgia law, a plaintiff bringing a civil conspiracy claim "must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." Walker v. Oglethorpe Power Corp., 802 S.E.2d 643, 657 (Ga. Ct. App. 2017) (quoting Hartsock v. Rich's Emps. Credit Union, 632 S.E.2d 476, 478 (Ga. Ct. App. 2006)), overruled in part on other grounds by Hanham v. Access Mgmt, Grp., L.P., 825 S.E.2d 217, 221 (Ga. 2019). When dismissal of the underlying tort claims is proper, a claim for civil conspiracy must also be dismissed. J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 448 (Ga. Ct. App. 2007) ("Absent the underlying tort, there can be no liability for civil conspiracy." (quoting Mustaqeem-Graydon v. SunTrust Bank, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002))).

26

Plaintiffs' civil conspiracy claim hinges on the alleged breach of fiduciary duties owed to KBS Savannah.[8]  (See doc. 38, pp. 16–17.)  Defendant contends that the claim must be dismissed as Plaintiffs' fiduciary duty claim fails because of Defendant's status as a non-managing member of KBS Savannah and it has not otherwise been alleged that he owed any other duties separate from his underlying contractual obligations.  (Doc. 41-1, p. 19.)  As discussed above, the Court rejects Defendant's arguments that Plaintiffs have failed to state a viable claim for breach of fiduciary duty.  See supra Discussion Section II.A.  Because there is a viable tort claim remaining, Count VI survives.  However, as neither AATU nor the Individual Plaintiffs have standing to assert the breach of fiduciary duty claim, they lack standing to bring Count VI.  See Miller v. Lomax, 596 S.E. 2d 232, 242 (Ga. Ct. App. 2004) (no claim for civil conspiracy absent an underlying tort).  As such, Count VI is **DISMISSED** with regard to AATU and the Individual Plaintiffs.

**III.     Whether Plaintiffs Have Sufficiently Pled a Claim for Fraud**

In examining the pleadings, the Court has come to question whether Plaintiffs' claim for fraud in Count V satisfies the heightened standard for pleading fraud imposed by Federal Rule of Civil Procedure 9(b).  While Count V's compliance with Rule 9(b) was not an issue raised by Defendant's Motion to Dismiss or addressed by the parties, the Court may raise the issue *sua sponte*.  Zuanich v. Hankook Tire Am. Corp., No. 3:18-CV-159-WKW, 2018 WL 6709466, at *5 (M.D. Ala. Dec. 20, 2018) (citing Am. United Life Ins. v. Martinez, 480 F.3d 1043, 1071–72 (11th Cir. 2007)).

Under Georgia law, a plaintiff asserting a fraud claim must allege facts showing: "(1) the defendant knowingly made a false statement; (2) the defendant intended for the plaintiff to act or

---

[8] Plaintiffs also predicate their conspiracy claim on their claims that Defendant breached the restrictive covenant.  However, because that claim sounds in contract and not tort, it cannot support the conspiracy claim.  The Court need not assess whether Plaintiffs' fraud claims could support the conspiracy claim because Plaintiffs did not allege that Defendant committed the fraud in concert with Kuppinger.

refrain from acting in reliance on that statement; (3) the plaintiff justifiably relied on the defendant's false statement; and (4) the plaintiff's reliance resulted in damage." Shea v. Best Buy Homes, LLC, 533 F. Supp. 3d 1321, 1336 (N.D. Ga. 2021) (quoting C & C Fam. Tr. 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins., 44 F. Supp. 3d 1247, 1253 (N.D. Ga. 2014)). Under the Federal Rules of Civil Procedure, claims for fraud are subject to a heightened pleading standard. See Fed. R. Civ. P. 9(b). To meet their burden under Rule 9(b), plaintiffs alleging fraud must set forth the following:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (citing Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)). Put another way, plaintiffs must provide "the who, what, when, where, how and why of the fraud." Shea, 535 F. Supp. 3d at 1337 (quoting AXA Equitable Life Ins., 44 F. Supp. 3d at 1254).

Plaintiffs have alleged facts establishing that Defendant, after being confronted over his potential breach of the Restrictive Covenant, provided an altered copy of the Operating Agreement to KBS Savannah and Plaintiffs to operate competing medical practices in Savannah. (Doc. 38, pp. 10–12, 16.) This satisfies the "who, what, when, where, and how" requirements for pleading fraud. Plaintiffs have not, however, provided the "why" of the fraud, failing to allege particular facts showing what Defendant obtained through his fraudulent acts. Instead, the Amended Complaint merely makes the general assertion that "[a]s a direct and proximate cause of [Defendant]'s fraud, Plaintiffs suffer and continue to suffer damages, including compensatory

damages, consequential damages, interest, costs, and attorneys' fees." (Id. at p. 16.)  This is insufficient under the heightened pleading standards imposed by Rule 9(b).

Indeed, it is unclear from the Amended Complaint that Plaintiffs even have a cognizable fraud claim under Georgia law, which requires showing not only that a defendant made false statements, but also that the claimant justifiably relied on those false statements and suffered damages as a result.  Shea, 535 F. Supp. 3d at 1336; see also Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1346 (N.D. Ga. 2013) (dismissing fraud claim where plaintiff failed to allege facts supporting justifiable reliance and damages).  The Amended Complaint contains no factual allegations indicating that Plaintiffs relied on the purportedly fraudulent Operating Agreement offered by Defendant, let alone that they suffered damages from any such reliance.  (See generally doc. 38.)  Plaintiffs' allegations are thus insufficient to state a claim for fraud under both Georgia law and the Federal Rules of Civil Procedure.

When a plaintiff fails to plead their fraud claim with sufficient particularity, the proper recourse is "ordering repleader of the claim, pursuant to Federal Rule of Civil Procedure 12(e)," rather than dismissal.  Williamson v. Williamson, No. 2:17-CV-289-SRW, 2018 WL 6822620, at *2 (M.D. Ala. Mar. 7, 2018) (citing Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1280 (11th Cir. 2006)).  Once a plaintiff has been given leave to amend a deficiently pled claim for fraud, a court may dismiss the claim *sua sponte* should the amended claim also fail to satisfy the requirements of Rule 9(b).  See Azzopardi v. Borland, No. 18-80861-CV, 2019 WL 13216655, at *3 (S.D. Fla. Jan. 15, 2019) (citing Am. United Life Ins. Co., 480 F.3d at 1069–70).  The Court thus **DIRECTS** Plaintiffs to replead their claim for fraud.  Plaintiffs must plead justifiable reliance and damages with sufficient particularity to satisfy Rule 9(b).  Should Plaintiffs fail to do so, the Court will dismiss Count V.

IV.     **Plaintiffs' Request for Leave to Amend**

At the end of their Response, Plaintiffs request leave to amend their Amended Complaint pursuant to Fed. R. Civ. Pro. 15(a)(2) "should the Court find any portion of the Complaint deficient." (Doc. 43, p. 22.)  A request for leave to amend is not properly raised if it is embedded in a brief opposing a motion to dismiss.  <u>Valiente v. Publix Super Markets, Inc.</u>, No. 22-22930-CIV, 2023 WL 3620538, at *7 (S.D. Fla. May 24, 2023) (citing <u>Newton v. Florida</u>, 895 F.3d 1270, 1277–78 (11th Cir. 2018)).  Moreover, Plaintiffs' request for leave is "an afterthought," asserted at the very end of Plaintiffs' Response and "lacking in substantive support under Eleventh Circuit [p]recedent." <u>Id.</u>  While Plaintiffs are permitted to amend their Amended Complaint with regards to Count V's claim for fraud as discussed above and to comport with this Order, the Court **DENIES** Plaintiffs' request for leave to amend as to all other claims.

<strong>CONCLUSION</strong>

For the above reasons, Defendant's Motion to Dismiss the Amended Complaint is **GRANTED in part** and **DENIED in part**.  (Doc. 41.)  Count I of the Amended Complaint is **DISMISSED** as to all Plaintiffs.  Count II is **DISMSISSED** with regard to the Individual Plaintiffs for lack of standing but remains pending as asserted by Plaintiffs CSTS and AATU, except that the request for injunctive relief included in Count II is **DISMISSED**.  Count III is **DISMISSED** with regard to AATU and the Individual Plaintiffs for lack of standing but remains pending as asserted by Plaintiff CSTS.  Count IV is **DISMISSED**.  Count V is deficiently plead, but the Court grants Plaintiffs leave to amend that claim as laid out above.  Finally, Count VI is **DISMISSED** with regard to the Individual Plaintiffs and AATU, but remains pending as to Plaintiff CSTS.

The Court **DIRECTS** Plaintiffs to file an amended complaint with **TWENTY-ONE (21)** days of this Order.  That amended pleading shall address the deficiencies in Plaintiff's fraud count

discussed above. However, the amended complaint shall not include any new claims or new factual allegations outside of those necessary to plead Plaintiff's fraud count. Plaintiffs amended pleading also shall not include any claims or parties which have been dismissed in this Order or previously. Additionally, each count in the amended complaint shall reflect which plaintiffs are asserting the count.[9] Plaintiffs' request for leave to amend generally is **DENIED**, and Plaintiffs may not amend their pleadings except as directed above.

      **SO ORDERED** this 1st day of July, 2026.

 

_____

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9] In other words, where the Court has ruled that a count should be dismissed as to a particular plaintiff or plaintiffs, the amended pleading should not include that plaintiff or plaintiffs among those asserting the count in the amended complaint.